787 So.2d 245 (2001)
Diane LUSZCZ, as personal representative of the Estate of Madeline S. Lavoie, Appellant,
v.
Donald G. LAVOIE, Appellee.
No. 2D00-1630.
District Court of Appeal of Florida, Second District.
May 25, 2001.
*246 W. Russell Snyder of W. Russell Snyder, P.A., Venice, for Appellant.
H. Stephen Hillebrand, Sarasota, for Appellee.

EN BANC
WHATLEY, Judge.
Diane Luszcz, as personal representative of the estate of her mother, Madeline S. Lavoie, appeals the trial court's order denying her motion for contempt and/or to enforce the final judgment of dissolution of Madeline's marriage to Donald G. Lavoie. We affirm.
In May 1997, Donald filed a petition for dissolution of marriage which acknowledged that the trial court had determined that his wife was totally incapacitated as a result of Alzheimer's disease. The plenary guardian appointed by the court for Madeline subsequently entered into a stipulation with Donald to a final judgment of dissolution of marriage which did not include releases of claims by either spouse against the other. Donald was ordered to pay alimony of $400 per month, and the marital assets valued at $184,531 were equally divided. To achieve the equal distribution, Donald and the guardian agreed that Donald would receive $11,165 of Madeline's Individual Retirement Account (IRA), and *247 Madeline would retain the balance of $31,835. Madeline had opened the IRA in 1995 and had designated Donald as the beneficiary.
Eight months after the final judgment was entered, Madeline died. No change had been made to the beneficiary designation of Madeline's IRA.[1] Consequently, Donald, as the designated beneficiary, sought distribution of not only the $11,165 awarded him in the final judgment of dissolution, but of all of the proceeds of Madeline's IRA. The IRA custodian complied.
As personal representative of her mother's estate, Diane Luszcz filed a motion for contempt and/or to enforce the final judgment of dissolution, seeking for the estate all funds obtained by Donald from Madeline's IRA over and above the $11,165 he was to receive pursuant to the dissolution judgment. The trial court properly denied the motion. See Cooper v. Muccitelli, 682 So.2d 77 (Fla.1996).
In Cooper, the parties' marriage was dissolved pursuant to a separation agreement which did not mention two life insurance policies the husband had procured during the marriage. He had named his wife as the primary beneficiary on both policies and his sister as the secondary beneficiary on one of the policies. Subsequent to the divorce, the husband changed the beneficiary designation on only one of the policies. After his death, the wife and the sister both sought the proceeds of the unchanged policy on which they had been named, respectively, the primary and secondary beneficiaries. The trial court as well as this court, Cooper v. Muccitelli, 661 So.2d 52 (Fla. 2d DCA 1996), and the supreme court all agreed that the wife was entitled to the proceeds. 682 So.2d 77. Noting that the parties had released all claims against each other in the dissolution of their marriage, the supreme court concluded that the husband was free to name whomever he desired as the beneficiary of the subject policy. To determine whom the husband had designated as the beneficiary, the court stated that it need look no further than the plain language of the policy. The husband had never changed the designation of the wife as the primary beneficiary, and she was therefore entitled to the policy proceeds. The court noted the impossible position the carrier would be placed in under a contrary holding: "the carrier could never be certain whom to pay in such a situation without going to court, in spite of what the policy said or how clearly it was worded." 682 So.2d at 79. It also noted, however, that "a settlement agreement that specifically requires one of the parties to maintain a named individual as beneficiary will control the disposition of proceeds upon notice to the insurer." Id. at 79 n. 1.
The personal representative urges this court to follow Vaughan v. Vaughan, 741 So.2d 1221 (Fla. 2d DCA 1999). In Vaughan, the parties' marital settlement agreement required the husband to transfer part of the value of his IRA to the wife, which he did. The husband had named the wife the primary beneficiary and the daughter the secondary beneficiary when he established the IRA. He did not change those designations after the divorce. After the husband died, the parties' daughter filed a declaratory action requesting that the trial court award the IRA proceeds to her. In reliance on Cooper, the court entered a summary judgment denying the daughter's request. This court reversed, *248 distinguishing Cooper on the grounds that the term policy in that case was not a marital asset and it was not referenced in the final judgment of dissolution. This court concluded that the Vaughans' release of all claims against the estate of the other in the settlement agreement and the acknowledgment that the settlement agreement superseded any prior understanding or agreement between the parties controlled over the IRA beneficiary designation.
We decline to follow Vaughan. Instead, we recede from that case with regard to its disposition of the IRA proceeds. An IRA is a contract with an institution that involves a third-party beneficiary designation. The rights of a spouse who has been named a beneficiary of an IRA arise from that contract, not from the marital relationship. Further, a beneficiary's rights to proceeds do not attach until the IRA owner's death. Until then, the beneficiary merely has an expectancy in the IRA because until the owner's death, the owner can do with the IRA as desired, including changing the beneficiary designation or cashing out the account altogether. See Waller v. Pope, 715 So.2d 958 (Fla. 2d DCA 1998); Cooper, 661 So.2d 52. Upon the IRA owner's death, however, the beneficiary's expectancy becomes an interest that attaches to the proceeds of the IRA, and those proceeds pass directly to the beneficiary; they do not pass through the estate. See Waller, 715 So.2d 958; Cooper, 661 So.2d 52. See also Graves v. Summit Bank, 541 N.E.2d 974 (Ind.Ct. App.1989). Unless the dissolution judgment requires a spouse to name a particular beneficiary as a condition of a dissolution of marriage, the owner of the IRA is free to name whomever desired as the beneficiary. This fact applies to the balance of an IRA remaining where a spouse is required to transfer part of that IRA as a condition of the dissolution. Upon the IRA owner's death, the institution need look no further than the IRA contract to determine the beneficiary. Otherwise, as pointed out by the supreme court in Cooper, the institution could never be certain whom to pay and would nearly always have to resort to going to court. In the end, it is the IRA owner's responsibility to change the beneficiary designation if a change is desired.[2] Some marriages do end amicably and with a spouse desiring to maintain an ex-spouse as a beneficiary.
This rule applies even in circumstances such as in this case where the IRA owner has been declared incapacitated before the dissolution of her marriage. Madeline designated her husband as the beneficiary of her IRA when she established it. Although her husband divorced her after her incapacity, the settlement he reached with her guardian did not call for a change in the beneficiary designation of the IRA; it only called for a transfer of part of the value of the IRA to him in order to achieve an equal distribution of marital assets. Therefore, Donald remained the beneficiary of Madeline's IRA and the trial court properly did not disturb the distribution to him of the proceeds of that IRA.
Accordingly, we recede from the IRA holding in Vaughan and conclude that the beneficiary designation in an IRA contract controls unless the IRA owner was required to designate a particular beneficiary as a condition of a dissolution of *249 marriage.[3] We also conclude that the beneficiary designation in an IRA contract controls over that part of an IRA the owner was awarded in a dissolution of marriage. Because an IRA is a contract with an institution, not with a spouse, this holding applies regardless of whether the parties to the dissolution have executed releases.
We note that in In re Estate of Dellinger, 760 So.2d 1016 (Fla. 4th DCA 2000), the Fourth District was faced with a situation identical to that in Cooper except that an IRA rather than an insurance policy was involved. The court held that "[w]here a separation agreement does not include IRA proceeds, courts `need look no further than the plain language of the policy' to determine who the decedent intended as beneficiary of the proceeds." Id. at 1017 (citing Cooper, 682 So.2d 77). Although Dellinger can be read to imply that where a separation agreement does include IRA proceeds, the courts would have to look further than the IRA contract to determine the beneficiary, we decline to express conflict with Dellinger because it does not expressly conflict with our holding in the present case.
Affirmed.
PATTERSON, C.J., THREADGILL, PARKER, ALTENBERND, NORTHCUTT, GREEN, CASANUEVA, STRINGER, DAVIS, SILBERMAN, JJ., Concur.
BLUE, J., Dissents with opinion, in which FULMER and SALCINES, JJ., Concur.
BLUE, Judge, Dissenting.
Although the rule established by today's decision has the advantage of easy application, I conclude that in all but the rarest of occasions its application will defeat the intent of the owner of the retirement account. Thus, I respectfully dissent.
There are three reasons to follow the result in Vaughan rather than recede. First, Vaughan conforms to the decisions from both this court and the supreme court in Cooper. Second, but perhaps most importantly, the decision in Vaughan honors the latest indication of the deceased's intent. Third, and perhaps of some importance to the bar, today's decision may create a trap for the unwary attorneys handling family law matters who have not advised their clients of the results for failure to change beneficiaries of assets distributed in final judgments. This third reason needs no further discussion.
As to the first reason, the majority relies on Cooper, 682 So.2d 77, that approved a decision of this court. See Cooper, 661 So.2d 52. Based on my reading of these cases, both Cooper opinions stand for the proposition that the parties are bound by the insurance contract when a different intent cannot be discerned from a subsequent judgment of dissolution. After quoting the pertinent provisions of the separation agreement and the insurance policy, the supreme court expressly held "that the plain language of the above documents controls" and dictates the payment of benefits to the named beneficiary when the settlement agreement did not mention the policy at all. Cooper, 682 So.2d at 79. Thus, it appears that the majority's reliance is misplaced because, in this case, the IRA was specifically distributed in the final judgment of dissolution. There are numerous cases where a named beneficiary of an insurance policy has been held not *250 entitled to the death benefits because the dissolution judgment provided that the children or former spouse were entitled to the proceeds. See, e.g., Roxy v. Roxy, 454 So.2d 84 (Fla. 2d DCA 1984); Dixon v. Dixon, 184 So.2d 478 (Fla. 2d DCA 1966).
In the case at issue, as in Vaughan, the retirement account was divided to achieve an equitable distribution of the marital assets. Cooper involved a term life insurance policy, not a marital asset divided in the dissolution. The factual differences alone, between this case and Cooper, render Cooper inapplicable to the resolution of the case before us. Even if I agreed that there were good policy reasons for the majority position, which I do not, I believe the majority should look somewhere other than Cooper to support their position.
As to the second reason for my decision to dissent, even if there was support in Cooper for today's decision, I would continue to support the result reached in Vaughan because that would honor the clear intent of the parties as expressed in their settlement agreement and final judgment. It would be preferable, once a property division has taken place, for the person retaining the retirement account to change the designation of beneficiary. Penalizing the failure to do so, however, penalizes human nature. Having divided an asset with a former spouse, one assumes that the former spouse has no interest in the account's remainder. If the account owner desires otherwise, because the marriage ended amicably or for other reasons, the owner could easily reaffirm the beneficiary designation after the dissolution.[4]
This case illustrates the inequity we commit in adopting a rule for the sake of clarity and efficiency. Marital assets were divided equally. Had the former husband in this case died first, would the former wife have any claim on the IRA funds awarded to the former husband? The answer is, of course, no! But we have no trouble awarding the former wife's share to the former husband when either her guardian or attorney failed to change the beneficiary. I believe that, for the sake of clarity and efficiency, we have adopted a rule that forsakes fairness and equity.
Accordingly, I would reverse the order of the trial court, reaffirming this court's decision in Vaughan. Thus, I respectfully dissent.
NOTES
[1] The trial court aptly noted that it made no ruling on the liability, if any, of the guardian for failing to review the wife's IRA and change the beneficiary, as that issue was not before the court.
[2] We note that although the Florida Legislature has declared that a provision in the will of a married person that pertains to that person's spouse becomes void upon the annulment or dissolution of the parties' marriage, § 732.507, Fla. Stat. (2000), there is no similar statute regarding beneficiary designations on IRAs or life insurance policies.
[3] Other jurisdictions have reached similar conclusions. See In re Estate of Rock, 612 N.W.2d 891 (Minn.Ct.App.2000); East v. PaineWebber, Inc., 131 Md.App. 302, 748 A.2d 1082 (Md.2000); Graves v. Summit Bank, 541 N.E.2d 974 (Ind.Ct.App.1989).
[4] We note that the former husband would not be able to receive such an asset through a will provision. Section 732.507(2), Florida Statutes (1997), states:

Any provisions of a will executed by a married person, which provision affects the spouse of that person, shall become void upon the divorce of that person or upon the dissolution or annulment of the marriage. After the dissolution, divorce, or annulment, any such will shall be administered and construed as if the former spouse had died at the time of the dissolution, divorce, or annulment of the marriage, unless the will or the dissolution or divorce judgment expressly provides otherwise.
Section 737.106, Florida Statutes (2000), contains a similar provision applicable to revocable trusts. The Florida Legislature has thus expressed the public policy of this state with regard to inheritance and trust rights of former spouses. I would have concluded that the courts had fashioned a similar rule, so that when assets are distributed by a final judgment of dissolution, the final judgment controls over the beneficiary designation unless expressly provided otherwise. In today's opinion, however, this court reaches a contrary conclusion. Thus, the legislature may wish to consider enacting a law similar to sections 732.507 and 737.106 to cover assets passing outside an estate or trust.