Kelsey McEwen ALEXANDER *v.* Fredrick John McEWEN
and First National Bank of Fort Smith

06-57 239 S.W.3d 519

Supreme Court of Arkansas
Opinion delivered September 21, 2006

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Marshall S. Ney*, for appellant.

*Smith, Maurras, Cohen, Redd & Horan, PLC*, by: *Robert Y. Cohen II*, for appellee.

J<small>IM</small> H<small>ANNAH</small>, Chief Justice. Kelsey Alexander McEwen appeals a September 30, 2005, Order of the Sebastian County Circuit Court finding that upon the death of Anne Stodder McEwen, the beneficiary designation to her Individual Retirement Account with SolomonSmithBarney directed that the funds remaining in the account be divided 67% to Kelsey and 33% to the Anne Stodder McEwen Trust for the benefit of John Fred McEwen. The circuit court found that while the Sixth Amendment to Anne's trust revoked Fund E, that same amendment added new trust terms that were in lieu of the revoked Fund E. Kelsey also appeals a finding by the circuit court that the equitable principle of unjust enrichment prohibited transfer of all the funds in the account to Kelsey. Fred appeals a finding by the circuit court awarding Kelsey $125,000 in fees and the circuit court's refusal to remove Kelsey as trustee.

*Facts*

On July 10, 1997, Anne created the Anne Stodder McEwen Trust. The trust provided Fund E, "for Frederick John McEwen," and Fund F, "for Kelsey McEwen Alexander." Other funds were set up that are not relevant to this case.

On June 3, 2002, Anne filled out a beneficiary designation to her IRA naming Kelsey and Fund E of the Anne Stodder McEwen Trust for Frederick John McEwen as the primary beneficiaries in the event of Anne's demise. However, on March 17, 2003, Anne executed a Sixth Amendment to her trust, which revoked that portion of her trust creating Funds E and F and in their place created a trust "for Frederick John McEwen" and a trust "for Kelsey McEwen Alexander." Both Funds E and F, and the trusts created in the Sixth Amendment distributed the residue of Anne's trust assets either directly or under trust one-third to Fred and two-thirds to Kelsey. Anne died on November 6, 2003. Kelsey believes that when Anne revoked that portion of her trust establishing Fund E, any right Fred had to the assets in Anne's IRA were extinguished, and she remains as the sole beneficiary. Fred asserts that he remains a beneficiary.

## Beneficiary Designation

An IRA constitutes a contract between the person who establishes the IRA for his or her retirement and the financial institution that acts as the custodian for the IRA. *Smith v. Smith*, 919 So. 2d 525 (Fla. Dist. Ct. App. 2006). An IRA includes designation of beneficiaries to receive the residue in the event of the retiree's death. *Id*. The question presented in this case is who or what entity, if any, is identified on the beneficiary designation form by the references to "Fund E," "Trust," a social security number, and Fred's birth date.

We are called upon to interpret the contract. In *Coleman v. Regions Bank*, 364 Ark. 59, 65, 216 S.W.3d 569, 574 (2005), we stated:

> The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. *See First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 832 S.W.2d 816 (1992); *Valmac Indus., Inc. v. Chauffeurs, Teamsters & Helpers Local Union No. 878*, 261 Ark. 253, 547 S.W.2d 80 (1977). In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Id*. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. *Missouri Pac. R.R. Co. v. Strohacker*, 202 Ark. 645, 152 S.W.2d 557 (1941). It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *First Nat'l Bank of Crossett*, 310 Ark. 164, 832 S.W.2d 816.

The IRA Beneficiary Designation form at issue provides:

> In the event of my death, pay the full value of my SolomonSmith-Barney, Inc. Individual Retirement Account (in equal proportions in the case of multiple beneficiaries unless otherwise indicated) to the Primary Beneficiary(ies) listed below. I understand that if a primary beneficiary predeceases me, his or her share will be divided equally among all surviving primary beneficiaries. You may add the notation per stirpes (or "by rights of representation") or per capita next to each name if you wish the children of a beneficiary that predeceases you to receive a share of this account.

| Name of Primary Beneficiary | Relationship | Date of Birth | Social Security No. | Percent of benefits |
|---|---|---|---|---|
| Kelsey McEwen Alexander | Daughter | xx-xx-xxxx | xxx xx xxxx | 67% |
| Fund E of the Anne Stodder McEwen Trust for Frederick John McEwen | Trust | xx-xx-xxxx | xxx xx xxxx | 33% |

From this form, it is clear that Anne wished that two beneficiaries receive the residue of her account upon her death. It is clear that Kelsey was to directly receive 67%. What is to happen to the remaining 33% is the issue.

Had Anne not executed the Sixth Amendment to her trust, Fund E would have been easily identified as Fund E of the Anne Stodder McEwen Trust for Frederick John McEwen. However, Fund E was revoked by the Sixth Amendment.

■ Kelsey argues that upon revocation, Fund E predeceased her under the terms of the IRA Beneficiary Designation form, leaving her as the only beneficiary. Predecease means to die before another. *Black's Law Dictionary* 1216 (8th ed. 2004). Thus, Kelsey argues that the fund "died." The IRA Beneficiary Designation form was obviously drafted under the assumption that the beneficiaries would be natural persons. A natural person is a human being. *Black's Law Dictionary* 1178 (8th ed. 2004). This court has recognized the difference between natural and artificial persons. *See Standard Pipeline Co. v. Burnett*, 188 Ark. 491, 66 S.W.2d 637 (1933). We reject the argument that revocation of a trust term equates to predecease.

■ The terms of the beneficiary designation indicate that 33% is to be distributed to the Anne Stodder McEwen Trust for John Frederick McEwen. The Sixth Amendment simply substituted new trust terms providing for Fred, "in lieu of," which is defined as "in the place of" or "instead of." *Gramling v. Baltz*, 253 Ark. 361, 362, 485 S.W.2d 183, 189 (1972). Thus, there was and there remains an Anne Stodder McEwen Trust, and that trust contains terms providing for distribution to John Frederick McEwen.

Additionally, we note that the beneficiary designation of Fund E also includes a reference to a social security number and birth date. The parties agreed that the birth date was Fred's. The

social security number was not identified, but the parties assert that it is either Fred's or the tax identification number for Anne's trust. In either case, the presence of the social security number, as well as the birth date, further support the conclusion that Fred is to receive 33% through Anne's trust.

The IRA beneficiary designation made it clear that Anne intended Fred to receive one-third of the residue in trust. However, as of the date of Anne's death, the IRA beneficiary designation form indicated that the third was to be paid to Fund E of Anne's trust, which benefitted Fred. The Sixth Amendment revoked Fund E. As of the date of Anne's death, the beneficiary designation was uncertain. As the circuit court noted in its August 25, 2006, letter, attorney Pat Moore informed Anne by a letter of January 27, 2003, that the Sixth Amendment to the trust was "basically a restatement of the plan you already had, setting it in one document and making the additions you requested." The Sixth Amendment specifically stated that the additions to benefit Fred were "in lieu of" the revoked fund. Thus, the circuit court implicitly found an ambiguity and correctly applied parol evidence to resolve the uncertainty. Where there is uncertainty of meaning in a written instrument, an ambiguity is present. *Black's Law Dictionary* 88 (8th ed. 2004). Where an ambiguity is found within the contract, parol evidence may be admitted. *Ultracuts Ltd. v. Wal-Mart Stores, Inc.*, 343 Ark. 224, 33 S.W.3d 128 (2000). It may not be admitted to alter, vary, or contradict the written contract, but it may be admitted to prove an independent, collateral fact about which the written contract was silent. *Id.* The circuit court properly considered the letter, which supports the conclusion that Anne intended for Fred to receive in trust one-third of the remainder of her trust. We find no error in the decision that the beneficiary designation form directs that 33% of the residue in the IRA be paid into the Anne Stodder McEwen Trust for the benefit of Fred.

Kelsey also argues that the circuit court erred in basing its decision on unjust enrichment. Because we hold that the circuit court correctly awarded the funds to Fred based on the contract, whether the circuit court erred in asserting an alternative basis for its decision becomes moot. We do not address moot issues. *Davis v. Williamson*, 359 Ark. 33, 194 S.W.3d 197 (2004).

## Trustee Fees

Fred cross-appeals arguing that the trust only allowed for fees to be paid to a corporate trustee, and because Kelsey is not a corporate trustee, she is not entitled to fees. This court long ago adopted the American rule that a trustee is entitled to reasonable compensation for his or her time and trouble. *Sutton v. Myrick,* 39 Ark. 424 (1882). A trustee is entitled to reasonable compensation out of the trust estate for services as trustee, unless the terms of the trust provide otherwise or the trustee agrees to forgo compensation. *Restatement (Third) of Trusts* § 38 (2003). Where a trust specifically states that a trustee is to serve without compensation, such a provision might be enforceable. *See, e.g., Hill v. Zanone,* 184 Ark. 594, 43 S.W.2d 238 (1931). No such provision is found in Anne's trust.

 Fred argues that the fees were arbitrarily awarded. He also argues that Kelsey seeks compensation for tasks that were performed by others who have already been paid for their services. Kelsey testified that she requested $125,000 because her attorney told her to seek that amount. Accountant Norris Taylor reportedly told her to ask for a higher figure; however, Taylor did not testify, and Kelsey testified that she was unaware of the methodology Taylor used in reaching the sum sought in fees.

Where a trustee has rendered services for which he or she has not been fully compensated, the court should allow compensation out of the trust principal or income. George Gleason Bogert, *The Law of Trusts and Trustees,* § 975, at 121 (2d ed. 1983). As noted in our early cases, the trustee is entitled to a reasonable fee. In arriving at a reasonable fee, the circuit court may consider such factors as: the time consumed in carrying out duties under the trust; the costs the trustee may have incurred; the nature of the services performed, including whether such services were routine or required skill and judgment; fees received by the trustee from beneficiaries to compensate the trustee; the fidelity or disloyalty displayed by the trustee; and the value of the services offered by the trustee in light of the trustee's experience and skill level. *See id.* at § 977, at 154 (2d ed. 1983). This matter is remanded for reconsideration of compensation of the trustee consistent with this opinion.

## Removal of the Trustee

 On cross-appeal, Fred also alleges that the circuit court erred in refusing to appoint a new trustee. Fred asserts that Kelsey

is biased, that there is a hostile relationship between him and Kelsey, and Fred also expresses concern with respect to the division of personal property. Kelsey argues that Fred failed to obtain a ruling on this issue and is precluded from raising the issue on appeal. The September 30, 2005, order states that, "[t]he request by Fred that Kelsey be replaced in her duty to divide the personal property is denied." A ruling was obtained.

The removal of a trustee lies in the sound discretion of the trial court. *Festinger v. Kantor*, 272 Ark. 411, 616 S.W.2d 455 (1981). The circuit court suggested but did not order that an independent party make the division due to the ill feelings between the parties. Mutual hostility between beneficiaries and the trustee is grounds for removal. *Blumenstiel v. Morris*, 207 Ark. 244, 180 S.W.2d 107 (1944). Fred alleges mutual hostility but does not develop his argument. We will not develop an issue for a party at the appellate level. *Carter v. Four Seasons Funding Corp.*, 351 Ark. 637, 97 S.W.3d 387 (2003). No abuse of discretion is shown on the record presented.

Affirmed on direct appeal; affirmed in part on cross-appeal and reversed and remanded in part on cross-appeal.

GLAZE, J., dissenting in part.

TOM GLAZE, Justice, dissenting in part. Removal of a trustee is within the sound discretion of a trial court. Here, I strongly believe there is evidence that the trial court abused its discretion when it allowed Kelsey to remain trustee.

The facts reveal that Fred is wheelchair bound due to a neuropathy condition, and he was in dire need of and received payments for his health care costs from the trust. The record reflects that Kelsey, acting as trustee, quit making Fred's necessary health care payments. Kelsey's refusal to see that Fred's necessary health costs and benefits are paid, seriously ignores Fred's health needs.

In addition, Anne's trust specifically awards fees *only* to a corporate trustee[1], not an individual trustee. Concerning these two

---

[1] Specifically, the Trust stated in relevant part:

Any corporate trustee shall be entitled to reasonable fees commensurate with its duties and responsibilities, taking into account the value and nature of the trust estate

matters above,[2] I believe that the trial court should have removed Kelsey as trustee. At the very least, the trial court should reconsider this issue when it conducts the fee issue this court has ordered on remand. In my opinion, when the trial court ignored information regarding Kelsey's conflict of interest coupled with Anne's intent to only have a corporation serve as the trustee of her trust, it abused its discretion. Accordingly, I would also reverse and remand for the trial court to appoint a new corporate trustee.

DICKEY, J., joins.

---

and the time and work involved. The Trustee shall be reimbursed for the reasonable costs and expenses incurred in connection with its fiduciary duties hereunder.

[2] The conflict of interest between Kelsey and Fred is even more apparent by Kelsey's refusal to share family "pictures and memorabilia" with Fred.