2010 Ark. App. 365

**Nathan LeRoy POFF, Jr., John Laurence Poff, and Jennifer Lynn Poff Beam, Appellants**

**v.**

**Carolyn Sue Poff PEEDIN, Appellee.**

**No. CA 09–737.**

Court of Appeals of Arkansas.

April 28, 2010.

Richard Hartley Mays, Ginger L. Harper, Mays & White, PLLC, Heber Springs, AR, for Appellants.

Charles A. Morgan, Jonathan William Beck, Dunn, Nutter & Morgan, LLP, Texarkana, TX, for Appellee.

DAVID M. GLOVER, Judge.

Appellants, Nathan LeRoy Poff, Jr., John Laurence Poff, and Jennifer Lynn Poff Beam, are the adult children of Dr. Nathan LeRoy Poff, who died on July 26, 1994. At the time of his death, Dr. Poff was married to his second wife, appellee Carolyn Sue Poff. Appellee is not the appellants' mother. She was eventually appointed as personal representative of the estate. A dispute arose among the parties during the administration of Dr. Poff's estate, and a family-settlement agreement was entered in July 1996. Approximately ten years later, additional property interests belonging to Dr. Poff were discovered in the form of mineral rights to 615 acres located in Cleburne County. It is undisputed that those property interests were unknown to any of the parties at the time the family-settlement agreement was entered.

On August 13, 2007, appellants sought to quiet title to the mineral rights in them. Appellee answered their complaint and counterclaimed that appellants were barred by the terms of the family-settlement agreement from claiming any interest in the mineral rights. On June 16, 2008, appellee filed a motion for summary judgment. Appellants contended in response that summary judgment was not appropriate because the meaning of the family-settlement agreement was in dispute in that it was their intent to settle issues that existed at the time the agreement was executed, not unknown matters such as subsequently discovered property.

Appellee filed a motion for declaratory judgment on November 8, 2008, asserting ownership of the mineral rights. Following a hearing on February 19, 2009, the trial court entered its decree on April 14, 2009, denying the relief sought by appellants in their complaint to quiet title and determining that appellee was the sole and rightful owner of the minerals. This appeal followed in which appellants contend that the "agreement did not terminate the rights of the Poff children in and to subsequently discovered mineral rights not listed in the estate inventory, nor known to exist by any of the parties, and the circuit court erred in ruling that the terms of the agreement gave Peedin sole ownership of the decedent's mineral interests." We affirm.

*Standard of Review*

This case was decided by the trial court on appellee's motion for declaratory judgment.[1] We review a circuit court's find-

---

1. "All orders, judgments, and decrees under    this chapter [on declaratory judgments] may

ings of fact from a bench trial for clear error, giving due regard to the opportunity of the circuit court to judge the credibility of the witnesses. *See* Ark. R. Civ. P. 52(a); *see also Poff v. Peedin,* 2010 Ark. 136, 366 S.W.3d 347 (answering certified question regarding appropriate standard of review). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Crane v. Taliaferro,* 2009 Ark. App. 336, 308 S.W.3d 648.

■ This appeal also clearly involves our review of the trial court's construction of the terms of the family-settlement agreement. Accordingly, our standard of review for contract interpretation is implicated as well. When a contract is free of ambiguity, its construction and legal effect are questions of law for the court to determine. *Tri–Eagle Enterprises v. Regions Bank,* 2010 Ark. App. 64, 373 S.W.3d 399. When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id.* As explained by our supreme court in *Wal–Mart Stores, Inc. v. Coughlin,* 369 Ark. 365, 371, 255 S.W.3d 424, 429 (2007):

■ Our standard of review for contract interpretation has been stated often:

The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain

and ordinary meaning. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

*See also Alexander v. McEwen,* 367 Ark. 241, 239 S.W.3d 519 (2006). It is a well-settled rule that the intention of the parties to a contract is to be gathered, not from particular words and phrases, but from the whole context of the agreement. *Roberts Contr. Co., Inc. v. Valentine–Wooten Road Public Facility Bd.,* 2009 Ark. App. 437, 320 S.W.3d 1. The court is to give great weight to the construction of the contract given to it by the parties, and it may look to the conduct of the parties to determine their intent. *Id.* When a contract is free of ambiguity, its construction and legal effect are questions of law for the court to determine. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one equally reasonable interpretation. *Id.* The determination of whether ambiguity exists is ordinarily a question of law for courts to resolve. *Id.*

■ Here, it is undisputed that none of the parties involved in this matter were aware of the mineral rights at issue at the time the family-settlement agreement was entered, and, consequently, the mineral rights were not listed as part of the estate's inventory. There are no allegations of fraud. As noted by appellants, Ark. Code Ann. section 28–53–119 allows for the

be reviewed as other orders, judgments, and decrees." Ark.Code Ann. § 16–111–109

(Repl.2006).

reopening of an estate under certain conditions, including the discovery of additional property. But here, the estate had never even been properly closed. Therefore, unless the terms of the family-settlement agreement bar consideration of the newly discovered mineral rights, it is clear that a trial court could determine the proper distribution of such property.

The family-settlement agreement provided in pertinent part:

WHEREAS, the parties have been involved in litigation pertaining to the interpretation of certain documents admitted to probate as the Last Will and Testament of Nathan LeRoy Poff, deceased, in Cleburne County Probate No. P 94–51; the decision in this matter having been appealed to the Arkansas Court of Appeals, in Arkansas Court of Appeals No.: CA95–1302; and

WHEREAS, the parties have also been involved in litigation pertaining to the foreclosure of certain real and personal property belonging to the Estate of Nathan LeRoy Poff and Carolyn Sue Poff in Cleburne County Chancery No.: E 95–109–1; the decision in this matter having been appealed to the Arkansas Court of Appeals, in Arkansas Court of Appeals No.: CA 95–1303; and

WHEREAS, the parties wish to avoid further litigation necessary to finally resolve the issues pertaining to all pending litigation; and

WHEREAS, the parties believe that it is in the best interest of all involved to enter into a stipulated agreement among and between themselves;

NOW, THEREFORE, all parties agree as follows:

1. For and in consideration of $60,000.00, $20,000.00 to be paid to each Poff child, the Poff Children hereby settle any and all interest they have as beneficiaries, and/or heirs-at-law of Na-

than L. Poff, deceased in Cleburne County Probate Case P 94–51. The sum of $60,000.00 for the three Poff Children shall be paid immediately upon the delivery of this document executed by the three Poff Children, by Hoyt Thomas, their attorney, to Michelle Strause, Attorney for Carolyn Sue Poff. This settlement does not bar the Poff Children from seeking a deficiency judgment against the Nathan L. Poff Estate in Cleburne Chancery Case No: E–95–109–1.

. . . .

3. This agreement settles all matters and outstanding claims between the parties with the exception of the payment of the foreclosure decree hereinafter set forth.

. . . .

7. Both appeals in the Arkansas Court of Appeals, No CA 95–1302 and CA 95–1303 shall be dismissed.

8. After dismissal of the two cases appealed to the Arkansas Court of Appeals, the parties hereto agree to enter their appearance in the Cleburne County Probate Court and the Cleburne County Chancery Court for the purpose of reducing this agreement to a Court Order in each case.... With the execution of the agreement, ..., it is understood that Carolyn Sue Poff may administer the Estate of Nathan L. Poff according to Arkansas law without any further obligation or notice to the Poff Children.

. . . .

10. This Agreement shall bind the heirs, administrators, executors, and assigns of the parties hereto.

Appellants contend that the language of the family-settlement agreement was clearly intended to address only existing claims between the parties and the divi-

sion of property that was known to the parties, not undisputed and unknown property rights. In support of their position, they emphasize the settlement-agreement language that ties the agreement to the litigation that was pending between the parties in designated case numbers and point out that the estate inventory and amended inventory did not list the mineral property rights at issue here. They also rely upon the fact that the agreement had no language addressing the possibility of subsequently discovered property nor any language releasing all claims, "known or unknown." With respect to the contract provision settling "all matters and outstanding claims between the parties," they contend that there were no outstanding claims between the parties regarding anything other than the property that was known to exist in the estate. They also analogize the settlement agreement to a release signed by an injured party concerning an automobile collision, and argue that "in the absence of express wording that the release covers injuries or other claims that are unknown at the time of the execution of the release, the majority of states have held that such a release does not cover future claims for unknown injuries."

Appellee counters, in essence, that the trial court did not err in concluding that the parties intended by their agreement to settle the entire estate and that, under the terms of that agreement, she was entitled to the subsequently discovered mineral rights. Both parties acknowledge that there are no Arkansas cases directly on point with the facts presented here.

The trial court examined the settlement agreement, and, clearly finding it to be unambiguous, concluded that appellee was the sole and rightful owner of any mineral rights owned by Dr. Poff at the time of his death, citing the following language in its final decree:

3. Paragraph 1 of the Family Settlement Agreement states: "For and in consideration of $60,000, etc., the Poff Children hereby settle **any and all interest** they have as beneficiaries" with the exception of their right to seek "a deficiency judgment against the Estate in Cleburne Chancery Case No. E–95–109–1."

4. Paragraph 3 of the Family Settlement Agreement states: "This agreement settles all matters and outstanding claims between the parties."

5. This Court finds that the term "outstanding claims" contained in said paragraph 3 included any and all claims that could have been asserted through a search of the public record.

(Emphasis in original.)

After our review of the contract language and the arguments raised by the parties in this appeal, we hold that there was no clear error in the trial court's findings of fact and that there was no error of law in its construction of the family-settlement agreement.

Affirmed.

VAUGHT, C.J., and GRUBER, J., agree.